# Commonwealth Insurance Company *versus* Globe Mutual Insurance Company.

A contract of re-insurance extends no further than the risk taken by the original underwriter; he cannot stipulate for indemnity against a risk which he has not assumed.

A policy of re-insurance " subject to such risks, valuations, and conditions, including the risk of premium note, as are or may be taken" by the original underwriters, is not an indemnity against a loss incurred on a different voyage from that originally insured. It covers only the insurable interest of the prior insurers.

ERROR to the District Court of *Philadelphia*.

This was an action of covenant by The Globe Mutual Insurance Company, to the use of Alanson Marsh, against The Commonwealth Insurance Company, on a policy of re-insurance, dated the 19th December 1855, whereby the defendants re-insured the plaintiffs against loss, to the amount of $1300, upon the British brigantine " Speed," lost or not lost, at and from Halifax, Nova Scotia, to Hull, England; " subject to such risks, valuations, and conditions, including the risk of premium note, *as are, or may be, taken* by the said Globe Mutual Insurance Company."

The brigantine Speed sailed on the 14th December 1855, on a voyage from Halifax, Nova Scotia, to Hull, in England. Shortly after commencing her voyage, she sprang a leak; and, on the 17th December, the vessel leaked so badly that the crew refused to do their duty, in consequence of which the master was obliged to put away for the harbour of Sydney, Cape Breton. She did not, however, reach that port, but on the 18th, was stranded in Indian Bay or Bridgeport, distant about fifteen miles from Sydney. The vessel was there repaired, after discharging her cargo, which had been insured by other underwriters; and it was subsequently agreed between the owners and the original underwriters, that after being repaired, she should take in a cargo and return to Halifax, and there end the voyage. On the 17th February 1856, the brigantine, having been repaired, sailed from Bridgeport to Halifax with a cargo, and on the 11th March, was driven ashore on the western end of Battery Island, near Louisburg, and was there bilged and became a total loss.

On the 18th December 1855, Struver, Kohl & Klugkist, commission merchants in New York, obtained from The Globe Mutual Insurance Company, on account of whom it might concern, a policy of insurance for $5000, upon the body, tackle and apparel, and other furniture of the brigantine Speed, lost or not lost, at and from Halifax, Nova Scotia, to Hull, in England; with liberty to proceed and sail, to touch and stay at any ports or places, if

[Commonwealth Insurance Co. *v.* Globe Mutual Insurance Co.]

thereto obliged by stress of weather or other unavoidable accidents.

On the 19th December 1855, The Globe Mutual Insurance Company applied to The Commonwealth Insurance Company for a re-insurance upon the vessel; and in pursuance thereof a policy of re-insurance for $1300 was issued to them as of that date, upon the body, tackle, apparel, and other furniture of the Speed, lost or not lost, at and from Halifax to Hull; "subject to such risks, valuations, and conditions, including the risk of premium note, as *are, or may be,* taken by the said Globe Mutual Insurance Company;" with liberty to said vessel to proceed and sail, to touch and stay at any ports or places, if thereunto obliged by stress of weather, or other unavoidable accident.

The application for re-insurance was made by letter from William H. Starbuck, an insurance broker of New York, on behalf of the Globe Mutual Insurance Company, to Gillett & Coggshall, the agents of the Commonwealth Insurance Company. On the 22d December, Gillett & Coggshall forwarded the policy of re-insurance by mail to William H. Starbuck, by whom it was received on the 24th. In their letter enclosing the policy, Gillett & Coggshall said, " we are inclined to think there must be something wrong with regard to the Mary Ann and Speed, as the Pacific has re-insured all their line on them, and we should like you to investigate the matter before you deliver the policies to the Globe Mutual." The policy contained the following clause :—" This policy shall not be binding until countersigned by Gillett & Coggshall." And the following memorandum was appended to it :—" Countersigned at Philadelphia, this 19th day of December 1855. GILLETT & COGGSHALL, Agents."

Notice of the disaster to the Speed was received in New York on the 21st December 1855, and on the following day, formal notice of it was given to the Globe Mutual Insurance Company. It was also known to Starbuck, who, notwithstanding, delivered the policy to the plaintiffs, on the ground, as he alleged in a letter to Gillett & Coggshall, that the information of the disaster had been received after the application for re-insurance had been sent to them.

After the vessel was stranded at Battery Island, the owners abandoned her to the underwriters, and the plaintiffs having paid $4807.41 under their policy, brought this action to recover a proportion thereof from the defendants.

The counsel for the defendants submitted the following points in writing, upon which the learned judge was requested to charge the jury :—

1. That the risk assumed by the defendants, was the risk of the voyage from Halifax, Nova Scotia, to Hull, in England.

2. That if the jury believe the brigantine was lost on her

return from Bridgeport to Halifax, according to the testimony of Lewis Gregory, the plaintiffs cannot recover.

3. That if the jury believe the brigantine was lost on her return from Bridgeport to Halifax, with the intention there to end the voyage, according to the testimony of Lewis Gregory, the plaintiffs cannot recover.

4. That the transmission of the policy to William H. Starbuck, by mail, with the instructions contained in the letter enclosing the same, was not a delivery to the plaintiffs.

5. That there is no evidence of an agreement to insure, except the making and transmission of the policy by mail to William H. Starbuck, with the instructions contained in the letter enclosing it.

6. That the delivery of said policy by William H. Starbuck, to the plaintiffs, after he knew of the stranding or disaster happening to the brigantine, was a violation of his instructions, and not binding upon the defendants.

7. That upon the whole evidence, the verdict of the jury should be for the defendants.

The court below (STROUD, J.), without giving any specific answer to the defendants' points, charged the jury:

" 1. That there was an insurable interest in the plaintiffs arising from the fact of the primitive insurance by them, under the policy of December 18th 1857. That it was open to the defendants to show that the original insured, Struver, Kohl & Klugkist, had no insurable interest under the policy with them, and if that had been shown, it would have been a defence in the present action. But that the plaintiffs were not bound in this action to give any evidence on that subject.

" 2. That the contract of re-insurance was complete upon the countersigning of the policy of re-insurance by Gillett & Coggshall, the agents of the defendants, and therefore that the correspondence between Gillett & Coggshall and William H. Starbuck, beginning with the letter of Gillett & Coggshall, of December 22d 1857, and including the subsequent letters between them and Starbuck, should be disregarded by the jury.

" 3. That although had the policy of December 19th 1857 been one of a simple re-insurance without more, the plaintiffs on the evidence would not have been entitled to recover, yet the policy contained the following provision, " this policy to be subject to such risks, valuations, and conditions, including risk of premium note, as are or may be taken by the said Globe Mutual Insurance Co., upon the body," &c. Taking the evidence then to be, that the Globe Insurance Co. and other underwriters at New York on the vessel, agreed with the owners, that the vessel, after the disaster near Bridgeport, might return to Halifax, and that the second disaster, which resulted in a total loss of the

vessel, occurred on this return voyage from the port of distress, yet if this was all done with the consent of the plaintiffs and they have paid to the owners under the policy with them $4807.41, this consent and payment would entitle the plaintiffs to recover from the defendants under the policy of re-insurance, the proper proportion of the $1300 re-insured."

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiffs for $1468.13, the defendants removed the cause to this court, and here assigned the same for error.

*Joel Jones*, for the plaintiffs in error.—A re-insurer insures nothing else than the risk assumed by the first insurer: 1 *Benecke* 211; *Emerigon*, ch. 8, § 14, p. 201; *Casaregis*, vol. 1, disc. 15, § 1, p. 45; *Guidon de la Mer*, ch. 2, § 19; 2 *Pardessus Collection de Lois Maritimes* 385; 2 *Valin*, art. 20, p. 65; *Park on Ins.* ch. 15, p. 276; *Sirey Code de Commerce, Annoté* 342; 3 *Boulay Paty* 434. Whatever is not at risk cannot be the subject of re-insurance: 3 *Boulay Paty* 434; 2 *Pothier, Traite d'Assurance,* No. 35, p. 1109. An insurer cannot re-insure himself for more than his interest, nor against any other peril than that he has assumed: 1 *Benecke* 212; Philadelphia Insurance Co. *v.* Washington Insurance Co., 11 *Harris* 253–4. The voyage insured and re-insured was from Halifax to Hull, and the vessel was lost, not on that voyage, but on one from Bridgeport to Halifax, and if the jury found this fact, the plaintiffs were not entitled to recover: Blackenhagen *v.* London Assurance Co., 1 *Campb.* 454–5.

The special clause in this policy that it was subject to such risks, &c., as were or might be taken by the original insurers, did bind the re-insurers for any risk that had not been then assumed by the first insurers; its object was to prevent the policy of re-insurance being defeated by a difference between the terms and conditions of the two policies. The subject-matter of the contract was an accurately defined risk, which had been taken by the insurers upon a designated vessel, on a designated voyage; and it was as necessary to the validity of either policy to define the voyage as to designate the vessel: *Hildyard on Ins.* 14; *Park on Ins.* 22; *Montefiore Prec.* 306; 8 *Mass.* 316–7; 9 *Id.* 87; *Condy's Marsh. on Ins.* 321. The consent of the first insurers to come into a new contract, or waive a right, could not bind the re-insurers: Langhorn *v.* Cologan, 4 *Taunt.* 330.

*Hazlehurst* and *J. P. Montgomery,* for the defendants in error.—Though re-insurance is usually an indemnity against a risk previously taken, yet it may, by agreement of the parties, be against risks yet future: Philadelphia Insurance Co. *v.* Washington Insurance Co., 11 *Harris* 253–4; *Ordinance of Louis XIV.*

tit. Assur. art. 20, *Le Guidon*, ch. 2, art. 20 ; 2 *Magin* 190, 419; *Park on Ins.* 280 ; Crowley *v.* Cohen, 2 *B. & Ad.* 478 ; 1 *Arn. on Ins.* 288 ; 3 *Kent's Com.* 280. And the special clause in this policy evidently embraces future risks. If the clause be obscure, that construction is to be taken that is most favourable to the assured : Western Insurance Co. *v.* Cropper, 8 *Casey* 355; Coster *v.* Phœnix Insurance Co., 2 *W. C. C. R.* 51; Robertson *v.* French, 4 *East* 136. And effect must be given to every part of the instrument: Oswald *v.* Kopp, 2 *Casey* 516; Western Insurance Co. *v.* Cropper, 8 *Id.* 356.

The opinion of the court was delivered by

STRONG, J.—It is a general principle, applicable as well to contracts of re-insurance as to those of insurance, that the assured must have an insurable interest. The contract is always one of indemnity, and where there is no danger of loss there is no subject-matter for a contract of insurance. Every underwriter has an interest which he may re-insure, though he has no owner-ship. But his interest extends no further than the risk which he has taken. He may stipulate for indemnity against loss from those perils against which he has undertaken, but not for indemnity against risks which he has not assumed when he obtains his policy of re-insurance. It can hardly be deemed necessary to refer to authorities in support of a doctrine so plain and familiar.

From this it necessarily results, that when The Globe Mutual obtained re-insurance from The Commonwealth Insurance Company, it was impossible for them to secure indemnity for anything more than against the liability which they had then assumed for the body, tackle, apparel, and other furniture of the brigantine Speed, on her voyage at and from Halifax to Hull, England. Beyond that the Globe had no insurable interest, and beyond that there was no risk of loss. Yet, under the instructions given to the jury, the re-insured were allowed to recover on the policy for an interest which the contract could not secure; for a loss on an entirely different voyage, a voyage from Bridgeport to Halifax, commenced after that originally insured was abandoned. The risk of this second voyage had not been undertaken by The Globe, had probably not been thought of, when The Commonwealth signed the policy of re-insurance. It was conceded by the learned judge who tried the cause, that if the policy had been one of simple re-insurance, without more, the plaintiffs on the evidence would not be entitled to recover, but it was supposed not to be a policy of simple re-insurance, because it contained the following provision : " This policy is to be subject to such risks, valuations, and conditions, including risk of premium-note, as are or may be taken by the said Globe Mutual Insurance Company." This the judge construed to be a stipulation that the re-insurers were to

be liable not only for the risks already assumed upon the brigantine Speed, but for any other risks The Globe Mutual might thereafter assume without their consent or even knowledge. With this construction of the policy we cannot concur. To us it is plain, that the clause already quoted is susceptible of no such interpretation. Its manifest purpose was, to place the re-insurers in the same position as that in which the original underwriters stood, as to the risk they had assumed. It made the terms, risks, valuations, and conditions of the two policies alike. It is true, that the policy of re-insurance is declared to be subject to such risks, &c., "as are or may be taken" by the re-insured, and it is true, that where the language of a policy will admit of two interpretations, equally reasonable, that must be adopted which most favours the assured. Still the construction must be a reasonable one. Let it be conceded that the words "are or may be taken" might embrace the future as well as the present or past, yet this was a contract of re-insurance. It necessarily assumed that the same risk had been undertaken by the assured. It was also a contract of indemnity against a risk taken upon a brigantine for a designated voyage, to wit, from Halifax to Hull. That was the subject-matter of the contract. If now another voyage can be substituted, the subject-matter is entirely changed. But it is an established rule of construction, that the language of parties is to be understood as referring to the subject of their contract. Might The Globe Mutual have substituted a voyage from New Orleans to Calcutta in place of the insured voyage from Halifax to Hull? Did the defendants engage to indemnify The Globe against loss for any risk they might assume for such a substituted voyage, and that without any increased premium? They did, if the position of the plaintiffs below be correct. Even more. There was as much right to transfer the risk to another vessel, as there was to change the voyage. Surely a construction of the policy which leads to such results is unreasonable.

It is, however, decisive against it, that when the policy was issued, The Globe Insurance Company had taken no risk on a voyage from Bridgeport to Halifax, and could not therefore re-insure it. Of course, the parties were not making a mere gaming contract—were not stipulating for a thing in regard to which stipulation was a nullity. It is useless to inquire whether the defendants might not have bound themselves to insure any risks which the first underwriters might thereafter take. To say the least, it is doubtful, whether such a contract would be lawful, but if it would, it would not itself be re-insurance. It would require that policies should be issued after every new risk undertaken.

We hold that the present is only a contract of indemnity against loss, in a risk which the plaintiffs had taken when it was made. It covered only the insurable interest The Globe Mutual

[Commonwealth Insurance Co. *v.* Globe Mutual Insurance Co.]

then had, and though the clause quoted from the policy is awkwardly expressed, it can admit of no other reasonable interpretation. It follows, that in our opinion the court erred in the instruction given to the jury. The first three points of the defendants below should have been affirmed. The first, fourth, and sixth assignments of error are therefore sustained.

This view of the case seems to render it unnecessary to consider the remaining assignments. We do not see how, upon the evidence, it is possible for any recovery to be had. We may say, however, that we are not prepared to dissent from the opinion of the learned judge of the District Court, in that portion of his charge which relates to the delivery of the policy.

Judgment reversed, and a *venire de novo* awarded.